UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

PEDRO ANTONIO NAVARRO,

        Petitioner,

v.                                 Case No. 2:16-cv-77
                                 HON. GORDON J. QUIST

DUNCAN MacLAREN,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Pedro Navarro filed this petition for writ of habeas corpus challenging his sentence after being found guilty by a jury of felony murder, Mich. Comp. Laws § 750.316(1)(b). The trial court sentenced defendant as a habitual offender, third offense, Mich. Comp. Laws § 769.11, to life in prison without the possibility of parole. The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2554 Cases in the United States District Courts. This matter is ready for decision.

Petitioner asserts the following claims:

I.      The trial court abused its discretion in admitting a letter written by defendant to his mother (while he was in jail) because the letter was not relevant.

II.     The trial court abused its discretion in admitting gruesome autopsy photos of the deceased child.

III.    The trial court abused its discretion in allowing testimony to be admitted without any factual basis to determine where, who, or what significance the testimony of alleged evidence would point to defendant's guilt.

IV.    The prosecution violated the defendant's right to a fair trial by presenting false evidence, counsel or assist a witness to testify falsely, offer an inducement to a witness.

V.      Defendant's conviction must be reversed due to insufficiency of the evidence.

VI.     Trial counsel deprived defendant effective assistance of counsel under *Strickland* standards.

VII.    Appellate counsel denied defendant effective assistance due to her failure to appear at oral argument.

(ECF No. 1, PageID.5).[1]

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective.  Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute.  Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of

---

[1] The undersigned reordered Petitioner's claims.

2

the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  The Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."  *Id.*  A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*  A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Id.* at 412.  Rather, the application must also be "unreasonable."  *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)).  Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable."  *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998).  The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness.  This presumption has always been accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990).  Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct.  The petitioner has the burden of rebutting

the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also*

*Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

In three of his claims, Petitioner argues that the trial court abused its discretion

when admitting evidence. First, Petitioner argues that the trial court erred when admitting into

evidence a letter he wrote to his mother while he was in jail because the letter was not relevant. In

this letter, Petitioner expressed to his mother that he was concerned that his girlfriend (the victim's

mother) was cooperating with the investigation. Petitioner asked his mother to convey his concerns

to his girlfriend. In rejecting this claim, the Michigan Court of Appeals stated:

> On appeal, defendant first argues that a letter that he wrote to his mother about his then girlfriend, Chyann Gonzalez, was irrelevant and wrongfully admitted at trial. The trial court admitted the letter because defendant expressed in the letter his feelings concerning Gonzalez's cooperation with the investigation into Aiyana's death .
> . . .
>
> "Evidence that defendant made efforts to influence an adverse witness is relevant if it shows consciousness of guilt." *People v. Shaw*, 288 Mich App 231, 237; 791 NW2d 743 (2010), citing *People v. Mock*, 108 Mich App 384, 389; 310 NW2d 390 (1981). Likewise, a defendant's attempt to procure perjured testimony "may be considered by the jury as evidence of guilt." *People v. Lytal*, 119 Mich App 562, 574; 326 NW2d 559 (1982). This evidence shows "consciousness of a weak case." *People v Hooper*, 50 Mich App 186, 199; 212 NW2d 786 (1973). Specifically, the inference from such evidence is "that a party's falsehood or other fraud in the preparation and presentation of his cause, his fabrication or suppression of evidence by bribery or spoliation, and all similar conduct, is receivable against him as an indication of his consciousness that his case is a weak or unfounded one; and from that consciousness may be inferred the fact itself of the cause's lack of truth and merit." *Lytal*, 119 Mich App at 575, quoting *Hooper*, 50 Mich App at 199.
>
> In the letter, defendant told his mother not to give Gonzalez a car seat because he saw a detective's telephone number in Gonzalez's telephone. The letter indicated that Gonzalez was "supposed to be there" for him and that he did not know "if she'd been talking to [officers] or not," but defendant felt that it was wrong for her to have

the detective's telephone number. Defendant also twice directed his mother to tell Gonzalez about his displeasure that she had the detective's telephone number. Even though defendant did not expressly threaten Gonzalez in the letter, the letter supports the inference that the defendant knew Gonzalez could provide information that would support his involvement in Aiyana's death, and, therefore, it demonstrated consciousness of guilt. See *Lytal*, 119 Mich App at 576. Accordingly, the trial court did not abuse its discretion in admitting the letter. *Smith*, 282 Mich App at 194.

(ECF No. 8-9, PageID.437-438).

Second, Petitioner argues that the trial court erred when admitting into evidence the autopsy photographs of the victim. According to Petitioner, the prejudicial effect of the gruesome photos significantly outweighed the probative value of the evidence. In rejecting this claim, the Michigan Court of Appeals stated:

Next, defendant argues that the trial court abused its discretion in admitting several autopsy photographs because [the] prejudicial effect of the evidence significantly outweighed the probative value of the evidence. Photographic evidence is generally admissible if it is relevant, MRE 401, and not unduly prejudicial, MRE 403. *People v. Gayheart*, 285 Mich App 202, 227; 776 NW2d 330 (2009), citing People v Unger, 278 Mich App 210, 247; 749 NW2d 272 (2008). Specifically, MRE 401 provides that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." "Admission of gruesome photographs solely to arouse the sympathies or prejudices of the jury may be error requiring reversal." *People v. Ho*, 231 Mich App 178, 187; 585 NW2d 357 (1998). "However, a photograph that is otherwise admissible for some proper purpose is not rendered inadmissible because of its gruesome details or the shocking nature of the crime." *Id.*

Defendant was charged with felony murder, the elements of which are: "(1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], (3) while committing, attempting to commit, or assisting in the commission of any of the felonies

specifically enumerated in" the statute. *People v Nowack*, 462 Mich 392, 401; 614 NW2d 78 (2000); MCL 750.316(1)(b). First-degree child abuse is an enumerated felony, MCL 750.316(1)(b), and proscribes in relevant part a person from knowingly or intentionally causing serious physical harm to a child, MCL 750.136b(2). Elements of the charged offense are always "at issue," and, thus, relevant under MRE 401.  See *People v Mills*, 450 Mich 61, 69-70; 537 NW2d 909 (1995).  Here, the photographs demonstrated that Aiyana's body was covered in bruising, that she had several broken bones, and that she suffered injuries to multiple internal organs, including her liver and kidneys.  "[E]vidence of injury is admissible to show intent to kill," and the fact that Aiyana suffered from such a number of injuries made it more probable that the acts that caused her death were intentional, not accidental. *Id.* at 71.

Likewise, the probative value of the photographs was not substantially outweighed by the danger of unfair prejudice.  The evidence of record indicates that the photographs presented an accurate factual representation of the injuries suffered by Aiyana. Although some of the photographs were graphic, "[g]ruesomeness alone need not cause exclusion." *Mills*, 450 Mich at 76.  Moreover, "if photographs are otherwise admissible for a proper purpose, they are not rendered inadmissible merely because they bring vividly to the jurors the details of a gruesome or shocking accident or crime, even though they may tend to arouse the passion or prejudice of the jurors.  Generally, also, the fact that a photograph is more effective than an oral description, and to that extent calculated to excite passion and prejudice, does not render it inadmissible in evidence." *Id.* at 77 (quotation omitted).  It was important for the jury to know the nature and extent of Aiyana's injuries and the record does not suggest that the prosecution introduced the photographs solely to shock or inflame the jury.  These photographs had significant probative force and the trial court did not abuse its discretion in admitting the photographs.

Defendant argues that the prosecution could have utilized an autopsy diagram instead of admitting the photographs, and that the photographs were redundant in light of the medical examiner's testimony and the fact that defendant was not challenging the manner of death.  However, even where the defendant stipulates to a fact, it "does not alter the prosecution's burden to prove every element of a crime beyond a reasonable doubt." *Mills*, 450 Mich at 69 n 5.  Further, "[t]he people are not required to present their case on any theory of alternative proofs." *Id.* at 70 n 6, quoting *People v Eddington*, 387 Mich 551, 562; 198 NW2d 297 (1972).  Finally, with regard to defendant's arguments concerning the relevancy of

the photographs depicting injuries to Aiyana's vaginal and anal
areas, we note that these photographs, which were exhibits 11 and
46, were never admitted at trial or presented to the jury; thus,
defendant's argument is without merit.

(ECF No. 8-9, PageID.437-439).

Third, Petitioner argues that the trial court erred in allowing testimony of a foster

care caseworker "about a statement that defendant made concerning his inability to calm himself

after he became upset" because the testimony had no factual basis or significance in determining

Petitioner's guilt.  (ECF No. 8-9, PageID.440). Petitioner maintains that the testimony "clearly

violated MRE 404(b)." When addressing the testimony of the foster car caseworker, the Michigan

Court of appeals stated:

> [W]e find that defendant waived this issue because defense counsel
> expressly acquiesced to this line of questioning. *See People v
> McKay*, 474 Mich 967, 967; 706 NW2d 832 (2005); *People v
> Carter*, 462 Mich 206, 217-218; 612 NW2d 144 (2000). Moreover,
> even if we were to reach the merits of this issue, we would find no
> error requiring reversal. First, the record reveals that the caseworker
> did not testify about any specific incident where defendant failed to
> control his temper; thus MRE 404(b) is inapplicable. Further, there
> is no evidence of record that the caseworker testified falsely.
> Defendant bears the "burden of furnishing the reviewing court with
> a record to verify the factual basis of any argument upon which
> reversal [is] predicated." *People v Elston*, 462 Mich 751, 762; 614
> NW2d 595 (2000). The factual record does not support defendant's
> contentions and, thus, his arguments are without merit.

(ECF No. 8-9, PageID.440).

An inquiry into whether a trial court abused its discretion when admitting evidence

"is no part of a federal court's habeas review of a state conviction."  *Estelle v. McGuire*, 502 U.S.

62, 67 (1991).  In *Estelle*, the Supreme Court addressed the issue of whether the admission of

evidence in violation of California state law entitled a petitioner to habeas corpus relief:

> We have stated many times that "federal habeas corpus relief does
> not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780

(1990); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984).  Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (per curiam).

*Estelle*, 502 U.S. at 67-68.

The appropriate inquiry is whether the allegedly improper admission of evidence violated the petitioner's constitutional rights.  *Id.* at 68.  A federal court will grant habeas corpus relief only where a violation of the state's evidentiary rule results in the denial of fundamental fairness, and therefore, a violation of due process.  *Brown v. O'Dea*, 227 F.3d 642, 645 (6th Cir. 1999) (citing *Cooper v. Sowders*, 837 F.2d 284, 287 (6th Cir. 1988)).  "Whether the admission of prejudicial evidence constitutes a denial of fundamental fairness turns upon 'whether the evidence is material in the sense of a crucial, critical highly significant factor.'"  *Id.* (quoting *Leverett v. Spears*, 877 F.2d 921, 925 (11th Cir. 1989)).

In the opinion of the undersigned, Petitioner has not established that the admission of the letter the defendant wrote to his mother while in jail, the autopsy photos of the deceased victim, and the testimony of the foster care caseworker was a "crucial, critical highly significant factor" that was so prejudicial that the state court trial was rendered fundamentally unfair. *Leverett*, 877 F.2d at 925. Therefore, the Michigan Court of Appeal's determination that the trial court did not abuse its discretion was neither contrary to nor an unreasonable application of established Supreme Court Precedent.

Petitioner next argues that the testimony of the foster care caseworker was presented by the prosecution to "falsify evidence before the jury" and resulted in the violation of Petitioner's right to a fair trial by "presenting false evidence, counsel, or assisting a witness to testify falsely, or offering an inducement to a witness." As stated above, the Michigan Court of

Appeals determined that: "[T]here [was] no evidence of record that the caseworker testified falsely. . . . The factual record does not support defendant's contentions and, thus, his arguments are without merit." (ECF No. 8-9, PageID.440).

In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law.  This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false.  The Due Process Clause does not guarantee that the procedure will produce a correct decision.  "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980).  "[T]he deprivation by state action of a constitutionally protected interest in "life, liberty or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original).  In order to establish a due process violation based upon the presentation of false or misleading testimony or evidence, a petitioner must show that the prosecutor knowingly elicited false material evidence.  *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998).  Mere inconsistencies in testimony fails to establish knowing use of false testimony.  *Id.*  As noted above, the Due Process Clause merely gives an accused person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false.  *Martinez*, 444 U.S. at 284, n.9.

Petitioner has failed to present any evidence that the prosecutor knowingly elicited false material evidence or to identify any inconsistencies in the caseworker's testimony. As noted above, the Due Process Clause merely gives an accused person the opportunity to convince an

unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. *Martinez*, 444 U.S. at 284, n.9. Petitioner's trial counsel had the opportunity to cross examine the witnesses and the jury weighed the credibility of the witness. Therefore, in the opinion of the undersigned, the testimony did not violate due process.

Petitioner next argues that his conviction must be reversed due to insufficiency of evidence that he personally was the perpetrator of the abuse that resulted in the victim's death. In rejecting this claim, the Michigan Court of Appeals stated:

> Identity is always an essential element in a criminal prosecution. *People v Oliphant*, 399 Mich 472, 489; 250 NW2d 443 (1976). "[T]his Court has stated that positive identification by witnesses may be sufficient to support a conviction of a crime." *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). But, "[c]ircumstantial evidence and reasonable inferences arising therefrom may [also] be sufficient to prove the elements of a crime." *People v Plummer*, 229 Mich App 293, 299; 581 NW2d 753 (1998).
>
> Here, evidence was presented at trial that Aiyana did not want to go into Samantha's home on two occasions while defendant was present. This supports the inference that Aiyana was fearful of defendant. *Nowack*, 462 Mich at 400. Samantha also testified that, a couple of nights before Aiyana died, defendant grabbed Aiyana by the arms, took her up to her room while she was crying, and told Samantha not to go check on her. When Samantha finally went to check on Aiyana, she was on the floor in a fetal position and her face was purple. After that incident, Aiyana stopped eating, vomited several times over the next 48 hours and looked visibly ill. Several people asked if Aiyana should be taken to the hospital. The forensic pathologist who performed the autopsy testified that Aiyana had liver injuries that were one or two days old at the time of her death. Samantha further testified that she woke up on July 19, 2005, to find that defendant was already awake and Aiyana was not breathing. Further, Gonzalez testified about an incident where defendant told her that one day Aiyana was sick, crying, and having a gag reflex and defendant "hit" her or "spanked" her. He then put Aiyana to bed and the next day she was not breathing. A rational juror could infer from this testimony that Aiyana suffered physical abuse by defendant in the 48 hours leading up to her death and that this abuse ultimately caused her death. *Nowack*, 462 Mich at 400; Plummer, 229 Mich App at 299. Defendant and Samantha were the only two

people in the home with Aiyana when she died, and both Samantha and Gonzalez testified that defendant hit Aiyana.    Although defendant suggests that Samantha was not a credible witness because she pleaded guilty to second-degree murder with regard to the incident, "[q]uestions of credibility are left to the trier of fact and will not be resolved anew by this Court."  *People v Kissner*, 292 Mich App 526, 534; 808 NW2d 522 (2011).  Additionally, even if there was evidence to support that Samantha perpetrated abuse against Aiyana, "[t]o establish that the evidence presented was sufficient to support the defendant's conviction, 'the prosecutor need not negate every reasonable theory consistent with innocence.'" *Id.* at 534, quoting *Nowack*, 462 Mich at 400.  In sum, contrary to defendant's argument, a rational juror could have found that the "identity" element was proved beyond a reasonable doubt. *Oliphant*, 399 Mich at 489.

(ECF No. 8-9, PageID.439-440).

A federal court sitting in habeas corpus review of a state criminal trial is to determine whether there was sufficient evidence of the essential elements of the crime to justify *any* rational trier of fact to find guilt beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  The evidence is to be considered in the light most favorable to the prosecution. *Id.*

As clearly explained by the Michigan Court of Appeals, the evidence was sufficient to justify any rational trier or fact to find guilt beyond a reasonable doubt.  Thus, the decision of the Michigan Court of Appeals was not contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner also argues that he was denied effective assistance of counsel because his trial counsel (1) failed to properly cross-examine and impeach the foster care caseworker's testimony, (2) failed to challenge the legality of a search warrant of Petitioner's residence, (3)

failed to call any witnesses to challenge the search warrant, and (4) failed to call any witnesses to

testify at trial. In rejecting these arguments, the Michigan Court of Appeals explained:

> Defendant first argues that defense counsel was ineffective for failing to challenge a search warrant issued to search defendant's residence and for failing to call any witnesses to challenge the warrant or to otherwise testify on defendant's behalf. However, other than defendant's cursory argument presented in his brief, defendant points to no evidence suggesting that a challenge could have been made to the search warrant or that witnesses existed that would have assisted in his defense and that such witnesses should have been called. In fact, the record does not contain the search warrant or any evidence with regard to how the search warrant was obtained. However, other than defendant's cursory argument presented in his brief, defendant points to no evidence suggesting that a challenge could have been made to the search warrant or that witnesses existed that would have assisted in his defense and that such witnesses should have been called. In fact, the record does not contain the search warrant or any evidence with regard to how the search warrant was obtained. Defendant also completely fails to cite any authority in support of his positions. Thus, the issues are abandoned. *People v McPherson*, 263 Mich App 124, 136; 687 NW2d 370 (2004) ("The failure to brief the merits of an allegation of error constitutes an abandonment of the issue."). "[D]efendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel." *People v Hoag*, 460 Mich 1, 6; 593 NW2d 57 (1999). With regard to his argument, defendant merely sets forth declarative statements without carrying his burden of establishing the factual predicate of his ineffective assistance of counsel claims. Additionally, although defense counsel has a duty to "prepar[e], investigat[e], and present[ ] all substantial defenses," *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009), "[a]n attorney's decision whether to retain witnesses . . . is a matter of trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). "In general, the failure to call a witness can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense." *Id.* (quotation marks and citation omitted). Here, defendant has not alleged that there were any witnesses who would have aided or corroborated his defense. Furthermore, defendant has not articulated any possible other defense that his attorney should have explored. Thus, defendant has failed to overcome the strong presumption that counsel's performance constituted sound trial strategy. *Strickland*, 466 US at 690; *Carbin*, 463 Mich at 600. Accordingly, defendant has not

established that his counsel's performance was objectively unreasonable. *Pickens*, 446 Mich at 338. Thus, his claim fails. Id

Defendant next asserts that his trial counsel was ineffective because he failed to sufficiently cross-examine witnesses. However, the record does not support defendant's assertion and, therefore, defendant has also failed to "establish the factual predicate for his claim of ineffective assistance of counsel" with regard to this argument. *Hoag*, 460 Mich at 6. Moreover, with regard to defendant's argument that defense counsel should have cross-examined the caseworker because she was falsifying evidence, there is nothing in the record to establish that false testimony was presented. Defense counsel is not required to take frivolous courses of action. *See People v Knapp*, 244 Mich App 361, 386; 624 NW2d 227 (2001). Therefore, defendant's arguments with regard to his ineffective assistance of counsel claims are without merit.

(ECF No. 8-9, PageID.441-442).

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). In regard to the performance prong, the court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside

13

that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691. Where counsel's performance did not fall below an objective standard of reasonableness, the court need not reach the question of prejudice. *See United States v. Foreman*, 323 F.3d 498, (6th Cir. Mar. 25, 2003).

Moreover, as the Supreme Court recently has observed, while "'[s]urmounting *Strickland*'s high bar is never an easy task,' . . . [e]stablishing that a state court's application was unreasonable under § 2254(d) is all the more difficult." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). Because the standards under both *Strickland* and § 2254(d) are highly deferential, "when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). In those circumstances, "[t]he question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

As established above, the Michigan Court of Appeals found that Petitioner failed to offer any evidence to establish that his trial counsel's performance was objectively unreasonable. Petitioner does not offer any argument to the contrary. Thus, in the opinion of the undersigned, the decision was not contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Therefore, Petitioner's claim of ineffective counsel fails.

Finally, Petitioner argues that appellate counsel denied him effective assistance because she failed to appear at oral argument during appeal. An ineffective assistance of appellate counsel claim is also analyzed under the two-prong test established in *Strickland*. *Strickland*, 466

U.S. at 687. With regard to the prejudicial prong of the inquiry, "the failure of counsel to appear at oral argument or to file a reply brief is not so essential to the fundamental fairness of the appellate process as to warrant application of a per se rule of prejudice". *United States v. Birtle*, 792 F.2d 846, 848 (9th Cir. 1986) (citing *Morgan v. Zant*, 743 F.2d 775, 780 (11th Cir. 1984), *overruled on other grounds*, *Peek v. Kemp*, 784 F.2d 1479, 1494 & nn.15-16 (11th Cir. 1986) (en banc); *cf. Hamilton v. McCotter*, 772 F.2d 171, 181-82 (5th Cir. 1985); *Schwander v. Blackburn*, 750 F.2d 494, 501-02 (5th Cir. 1985)). Furthermore, "[o]ral argument on appeal is not required by the Constitution in all cases; nor is it necessarily essential to a fair hearing. This is particularly true when 'legal arguments only are involved, and the material issues have been briefed.'" *Birtle*, 792 F.2d at 848.

Here, Petitioner's appellate counsel failed to appear at oral arguments due to a confusion in scheduling. (ECF 1-1; PageID.19). Prior to oral argument, Petitioner's appellate counsel fully briefed the material issues and timely filed the pleading with the Michigan Court of Appeals. Petitioner has not pointed to any additional information or arguments that appellate counsel could have presented at oral argument which were not raised in the appellate brief. Petitioner has failed to show that appellate counsel's failure to appear at oral arguments prejudiced Petitioner resulting in an unreliable or fundamentally unfair outcome.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, the undersigned recommends that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief.  Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted.  A certificate should issue if

Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: October 22, 2018

      /s/ Timothy P. Greeley
      TIMOTHY P. GREELEY
      UNITED STATES MAGISTRATE JUDGE